UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES BLUNT,

      Petitioner,                                     Case Number: 4:08-CV-14808

vs.

                                           HON. MARK A. GOLDSMITH

MARY BERGHUIS,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Charles Blunt filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Currently in the custody of the Michigan Department of Corrections, Petitioner challenges his convictions for bank robbery, two counts of armed robbery, felon in possession of a firearm, carrying a concealed weapon, second-degree fleeing a police officer, and possession of a firearm during the commission of a felony, on the grounds that his convictions violate the Double Jeopardy Clause and that he was denied his right to self-representation.  For the reasons discussed below, the Court denies the petition.

## I.  Facts

Petitioner's convictions arise from a bank robbery at Citizen's Bank in Livonia on October 27, 2005.

Pamela Persha testified that on October 27, 2005, at approximately 3:00 p.m., Petitioner entered the bank.  After making several inquiries about making a withdrawal, Petitioner

approached Persha's desk, took out a gun and told her that he would blow her co-worker's "head off" if he was not given the bank's money.  Persha did not have a key to any money drawers.  The co-worker, Carrie Coqswell, opened the money drawers with her key and gave Petitioner money.  Coqswell placed bait money and a dye pack with the money she provided to Petitioner.

Perhsa testified that Petitioner then went to her co-worker Gerri Kirkpatrick's office and took money from Kirkpatrick's bank drawers.  Kirkpatrick testified that Petitioner did not take any of her personal money.

Carrie Coqswell testified that Petitioner entered the bank on the day of the robbery, approached her and Persha, pulled out a gun and demanded that she give him money.  Coqswell removed money from the desk drawer, together with a dye pack.  Petitioner did not take any of her personal money.

Michael Kingsbury testified that he is a police officer for the City of Livonia.  On October 27, 2005, he responded to a radio report that an off-duty lieutenant had seen a vehicle that matched the description of the vehicle involved in the bank robbery.  Officer Kingsbury located the vehicle.  He and several other marked police vehicles attempted to surround Petitioner's vehicle as it was proceeding down the road.  Petitioner's vehicle struck Officer Kingsbury's.  Officer Kingsbury was able to see into Petitioner's vehicle and identified Petitioner as the driver.  Officer Kingsbury and other officers continued to attempt to stop Petitioner's vehicle.  Ultimately, Petitioner was involved in an accident, which resulted in his vehicle landing on top of Officer Kingsbury's vehicle.  Petitioner climbed out of his vehicle and fled on foot.  Officer Kingsbury chased Petitioner and ultimately apprehended him.  Officer Kingsbury found money stuffed in Petitioner's pants.  Officer Kingsbury also found with

2

Petitioner a dye pack and the bait money from Citizen's Bank.

Petitioner testified in his own defense.  He admitted using a gun to take money from a bank, but denied taking any bank employees' or customers' personal money from them.

## II.  Procedural History

Following a bench trial in Wayne County Circuit Court, Petitioner was convicted of bank robbery, two counts of armed robbery, felon in possession of a firearm, carrying a concealed weapon, second-degree fleeing a police officer, and possession of a firearm during the commission of a felony.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising two issues: (i) his convictions for both armed robbery and bank robbery constitute double jeopardy, and (ii) the trial court violated his constitutional right to self-representation.  The Michigan Court of Appeals affirmed Petitioner's convictions.  People v. Blunt, 2007 WL 2549867 (Mich. Ct. App. Sept. 6, 2007).  Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same two claims listed above.  The Michigan Supreme Court denied leave to appeal.  People v. Blunt, 743 N.W.2d 22 (Mich. 2008).

Petitioner then filed the instant petition for a writ of habeas corpus.  He raises the same two claims raised in state court.

## III.  Discussion

## A.  Standard of Review

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA provides:

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Section 2254(d)(1) limits habeas review to a determination of whether the state court's decision "applies a rule that contradicts the governing law set forth in [Supreme Court cases] or . . . confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent." Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (internal quotations omitted). This statute "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007).

To satisfy the "unreasonable application" prong of the statute, "the state court's decision must have been more than incorrect or erroneous. The state court's application must have been

4

'objectively unreasonable.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003) (internal quotations omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 789 (Jan. 19, 2011) (<u>quoting Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . .  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  <u>Id.</u> at 786-87 (internal quotations omitted).  Moreover, Section 2254(e)(1) requires that a federal habeas court presume the correctness of state court factual determinations, rebuttable only with clear and convincing evidence.  <u>Warren v. Smith</u>, 161 F.3d 358, 360-61 (6th Cir. 1998).

**B.  Double Jeopardy Claim**

Petitioner argues that his convictions for both armed robbery and bank robbery arising out of the same offense violate the Double Jeopardy Clause.

The Double Jeopardy Clause of the Fifth Amendment provides that a person may not "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V.  This clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense.  <u>Brown v. Ohio</u>, 432 U.S. 161, 165 (1977).  "Because the substantive power to prescribe crimes and determine punishments is vested with

5

the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." <u>Ohio v. Johnson</u>, 467 U.S. 493, 499 (1984) (internal citations omitted).  Where "a legislature specifically authorizes cumulative punishment under two statutes for the same conduct, regardless of whether those two statutes proscribe the 'same' conduct. . . , a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." <u>Missouri v. Hunter</u>, 459 U.S. 359, 368-69 (1983).  In determining whether the legislature has intended to authorize cumulative punishments, the habeas court is "bound by a state court's determination of the legislature's intent." <u>Banner v. Davis</u>, 886 F.2d 777, 780 (6th Cir. 1989).

The Michigan Court of Appeals has concluded that convictions for bank robbery and armed robbery do not violate the Double Jeopardy Clause because the legislature intended to impose multiple punishments.  <u>People v. Ford</u>, 687 N.W.2d 119, 128 (Mich. Ct. App. 2004). "[B]ecause the armed robbery statute and the bank, safe, or vault robbery statute are intended to protect different social norms, the statutes can generally be viewed as separate and amenable to permitting multiple punishments." <u>Id.</u> at 127 (internal quotations omitted).

The Michigan Court of Appeals found further support for the conclusion that the legislature intended to impose multiple punishments in the legislative sentencing guidelines. Though both offenses are punishable by up to life in prison, armed robbery is a class A offense and bank robbery a class C offense, resulting in a greater recommended sentence under the guidelines for armed robbery than for bank robbery. <u>Id.</u> "This disparate sentencing treatment supports the conclusion that the Legislature's primary focus in the bank robbery statute was the

6

type of property targeted by the offender rather than that the offense be committed by assaulting a person." Id.

The Ford panel also held that the statutes satisfied the "same elements" test set forth in Blockburger v. United States, 284 U.S. 299 (1932). In Blockburger, the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304. Applying Blockburger, the Ford panel concluded:

> [A]rmed robbery lacks an element necessary to violate the bank, safe, or vault robbery statute: the intent to steal property from "any building, bank, safe, vault or other depository of money, bonds, or other valuables." Similarly, the offense of armed robbery contains elements never required to prove bank, safe, or vault robbery: the use of "a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon" and the taking of property from or in the presence of a person.

Ford, 687 N.W.2d at 128 (internal citations omitted). Based on the foregoing, the Ford panel held that the Double Jeopardy Clause was not violated.

Accepting, as the Court must, the state court's interpretation of legislative intent, the Court finds that Petitioner's convictions do not violate the Double Jeopardy Clause. As evidenced by the decision in Ford, the Michigan courts have ruled that the Michigan Legislature intended to impose multiple punishments where a defendant engages in conduct that amounts to both bank robbery and armed robbery. In Petitioner's appeal, the Michigan Court of Appeals faithfully applied the Ford decision, as well as the United States Supreme Court's decision in

Blockburger.  Accordingly, Petitioner's claim for habeas relief based on double jeopardy must be rejected.

**C.  Right to Self-Representation**

Second, Petitioner argues that his right to self-representation was violated because the trial court denied his request to represent himself.

The Sixth Amendment grants a criminal defendant the right to represent himself in criminal proceedings.  Faretta v. California, 422 U.S. 806 (1975).  This right, however, is not unqualified.  First, the accused must "knowingly and intelligently" waive the right to counsel and "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes wide open."  Id. at 835 (internal quotation omitted).  Second, the accused must be "able and willing to abide by rules of procedure and courtroom protocol."  McKaskle v. Wiggins, 465 U.S. 168, 174 (1984).

Numerous cases confirm the right of self-representation may be overridden to protect the integrity and efficacy of the legal process.  "The right of self-representation is not a license to abuse the dignity of the courtroom.  Neither is it a license not to comply with relevant rules of procedural and substantive law."  Faretta, 422 U.S. at 834 n.46.  Thus, "a trial court may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."  Id.  This dictum has been applied to deny the right of self representation to disruptive defendants.  See, e.g., United States v. Lopez-Osuna, 232 F.3d 657, 665 (9th Cir. 2000) (holding that a trial court may refuse a defendant's request to represent himself when he is unable or unwilling to abide by rules of procedure and courtroom protocol); United States v. Frazier-El, 204 F.3d 553, 559 (4th Cir. 2000) ("[T]he Faretta right to self-

8

representation is not absolute, and the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.") (internal quotation omitted); <u>United States v. Brock</u>, 159 F.3d 1077, 1079 (7th Cir. 1998) ("when a defendant's obstreperous behavior is so disruptive that the trial cannot move forward, it is within the trial judge's discretion to require the defendant to be represented by counsel").

In response to Petitioner's request to represent himself, the trial court engaged in a long and thoughtful colloquy with Petitioner, following which the trial court held that Petitioner's request to represent himself was not intelligently made and would be unduly burdensome to the court based upon Petitioner's behavior.  The trial court explained as follows:

> Mr. Blunt has certainly expressed an interest in representing himself, and I do think that it is curious that there is no real strongly stated reason why. . . .  I think certainly it's voluntarily made, but in terms of this request being an intelligent waiver, I have very real concerns.  I mean in this particular case Mr. Blunt, who has a tenth grade education, clearly just in the dialogue that we had this morning did not seem to have a real grasp as to the basis for evidence and under what circumstances the case might be dismissed.

> He did not even seem to have a complete grasp on the accurate notion of the plea offer and sentence agreement, how that applied with regard to the guidelines with regard to the total offer.  And then also how it applied to the bank robbery charge alone, there certainly was a serious misapprehension.

> I also take into account for purposes of this analysis . . . I have to consider whether or not it will disrupt, unduly inconvenience, or burden the Court and the Court's business.

> This is a matter in which Mr. Blunt initially had been sent to the Forensic Center on a request by the defense, the

9

request on the issue of competency.  That did come back, and it did in fact reflect a belief on the part of the Forensic Center personnel that Mr. Blunt was malingering and that he was in fact manufacturing particular false issues of mental illness.

He also sort of manifested, I think, in terms of I remember a Pretrial we had here where Mr. Blunt had requested the Court's assistance in requiring help.

One of the witnesses he wanted to have in securing a defense witness to testify on his behalf was Sadam Hussein, and that to me is certainly consistent with the notion of being burdensome to the Court and unduly inconvenienced.

And this morning we had a circumstance where as we were preparing this matter for trial and getting this matter ready for trial, Mr. Blunt had refused to initially change out into civilian clothes and had come over here in jail greens, once again delaying the matter causing a burden and taking a while for his counsel and even I think my staff to try to talk to Mr. Blunt and to try to persuade him that, you know, when going to trial appearing in jail greens is not in his best interest from a tactical standpoint.

But once again it does cause a disruption to the orderly progress of this particular case, and it would be an inconvenience to all personnel involved.

. . . I'm going to deny the request to represent himself.

Tr., 7/25/06, at 14-17.

The Michigan Court of Appeals held that the trial court's decision to deny Petitioner's request to represent himself did not violate Petitioner's constitutional rights.  The Michigan Court of Appeals held that the trial court properly considered Petitioner's behavior and how it would impact the court proceedings.  Petitioner's history of being a malingerer, seeking to call Saddam Hussein as a witness, and unfamiliarity with the rules of court proceedings, justified the

10

denial of self-representation.

Faretta does not require a trial court to grant a request for self-representation when that self-representation is likely to be disruptive to ongoing proceedings. The charges in this case were serious and Petitioner was neither highly-educated nor trained in the procedures of the courtroom. Petitioner also exhibited disruptive behavior during the pre-trial process. Given such circumstances, the Court finds that the state court's decision that Petitioner's right to self-representation was not violated was not contrary to, nor an unreasonable application of, Faretta. There is, therefore, no basis for habeas relief as to that claim.

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition has failed to establish any entitlement to habeas corpus relief. Therefore, the Court denies a certificate of appealability.

## V.  Conclusion

11

For the foregoing reasons, it is ordered that the petition for a writ of habeas corpus is denied and the matter is dismissed with prejudice.

It is further ordered that a certificate of appealability is denied.

Dated:  April 5, 2011                          s/Mark A. Goldsmith
                                               MARK A. GOLDSMITH
                                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 5, 2011.

                                               s/Lisa Wagner for Deborah J. Goltz
                                               DEBORAH J. GOLTZ
                                               Case Manager

12